Deborah R. Rosenthal (SBN 184241)
drosenthal@simmonsfirm.com
**SIMMONS HANLY CONROY LLP**
455 Market Street, Suite 1270
San Francisco, California 94105
Phone: (415) 536-3986
Fax: (415) 537-4120

*Attorney for Plaintiffs*

*(Additional Counsel on Signature Page)*

# IN THE UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DONALD SAUNDERS, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CHARLES SCHWAB & CO., INC. and THE CHARLES SCHWAB CORPORATION, | |
| Defendants. | |

Plaintiff, on behalf of himself and the proposed Classes defined herein, seeks redress for the harm caused by Defendants' conduct. In support of his Complaint, Plaintiff alleges the following:

## I.    NATURE OF THE ACTION

1.    Instead of fulfilling their fiduciary and contractual duties and a regulatory mandate to act only in the best interests of their clients, Defendants implemented, and continue to implement, a system whereby they use their clients' cash balances to generate massive profits for themselves while shortchanging their clients—in flagrant violation of their duties to their clients.

## II.    JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d). Plaintiff is diverse from Defendants and the amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs.

3.    This Court has personal jurisdiction over Defendants because they conduct substantial business in this district and have their principal place of business here.

4.    Venue is proper in this district under 28 U.S.C. § 1391.

## III.    PARTIES

5.    Plaintiff Donald Saunders is a citizen of Missouri.

6.    Defendant Charles Schwab & Co., Inc. ("CS & Co.") is a California corporation with its principal place of business in Westlake, Texas, and is a registered broker-dealer and investment adviser with the SEC.

7.      Defendant The Charles Schwab Corporation ("CSC") is a Delaware corporation with its principal place of business in Westlake, Texas.

8.      CS & Co. is a wholly owned subsidiary of CSC.

9.      Plaintiff maintained a retail individual retirement account with CS & Co.

10.     Plaintiff's account (ending in 22) was originally established with TD Ameritrade in 2013. In 2020, CSC acquired TD Ameritrade, and thereafter all of TD Ameritrade's accounts, including Plaintiff's, were transitioned to CS & Co.

11.     CS & Co. and CSC are the successors to TD Ameritrade.

12.     As used herein, the term "Schwab" collectively refers to CS & Co., CSC, and TD Ameritrade.

13.     The cash balances in Plaintiff's account were swept into Schwab's cash sweep programs.

14.     CSC "engages, through its subsidiaries (collectively referred to as Schwab or the Company), in wealth management, securities brokerage, banking, asset management, custody, and financial advisory services."[1] CSC provided those services to Plaintiff and other members of the proposed Class, and it substantially

---

[1]      2023 Annual Report (Form 10-K), The Charles Schwab Corporation, at 3 (Dec. 31, 2023).

assisted, encouraged, directed, induced, participated in, and received the benefits of the wrongful conduct alleged herein that was conducted primarily by CS & Co.

## IV.    FACTUAL ALLEGATIONS

15.    A significant source of income for Schwab is net interest income. Net interest income is the difference between the amount of interest that Schwab pays to or secures for the benefit of its brokerage and advisory clients and the amount of interest that Schwab and its affiliates earn on those cash balances themselves.

16.    Schwab, like many financial services companies, offers "cash sweep" programs to its clients. Cash sweep programs figuratively "sweep" clients' cash balances into interest-bearing accounts at a network of banks.

17.    Schwab makes more money when its clients' funds are invested in the Schwab cash sweep programs rather than in similar cash options and equivalents.

18.    For its clients who are in the Schwab cash sweep programs, Schwab pays and/or secures interest rates on the clients' cash balances that are neither reasonable nor in compliance with its legal duties.

### A.    Schwab's Cash Sweep Programs

19.    Schwab provides a "Bank Sweep" program for its retail brokerage accounts and a "Bank Sweep for Benefit Plan" for its retirement plan accounts, whereby cash in its clients' brokerage accounts is automatically deposited into accounts at one or more program banks. TD Ameritrade had a cash sweep program

COMPLAINT

that operated in substantially the same way as the "Bank Sweep" and "Bank Sweep for Benefit Plan" programs.

20.    Schwab fails to pay to or secure for its clients a reasonable rate of interest on the cash balances in its cash sweep programs.

21.    As of September 3, 2024, Schwab advertises that it pays or secures for its clients an interest rate of 0.45% for "uninvested cash in your Schwab brokerage and retirement accounts."[2]

22.    The interest rates that Schwab paid to or secured for its clients during the period that Plaintiff maintained his account with Schwab were materially the same as those set forth in the preceding paragraph.

23.    The interest rates Schwab pays to or secures for its clients in its cash sweep programs violate Schwab's duties to its clients because the rates are not reasonable, which constitutes a breach of Schwab's fiduciary and contractual duties to its clients and falls below the standard of care set out in Regulation Best Interest, 17 CFR § 240.15l-1 (2019) (hereinafter "Reg. BI").

24.    Schwab's sweep of Plaintiff's and the Class members' cash into its cash sweep programs during the entire period in which they held accounts with Schwab constitutes a continuing wrong and was a continuing breach of Schwab's duties to

---

[2]    *Looking for more ways to put your cash to work?* Charles Schwab, available at https://www.schwab.com/cash-investments (accessed Sept. 3, 2024).

COMPLAINT

Plaintiff and the Class members. Each time Plaintiff and the Class members received an interest payment based on a rate that was less than a reasonable rate of interest, they were injured by Schwab.

**B.    Schwab's Duties to Its Clients**

25.    Schwab owes duties to its clients based on the type of relationship it has with the client.  For example:

    a.    for all retail brokerage advisory accounts (i.e. accounts managed by an investment adviser), Schwab is required to act as a fiduciary to its clients, meaning it must act for the benefit of its clients and not its own self-interest;

    b.    for all retail brokerage non-advisory client accounts (i.e. non-managed accounts), Schwab is required to always act in the "best interests" of its clients; and

    c.    for all retail accounts, Schwab expressly or impliedly agreed to abide by all federal regulations, and therefore Schwab was contractually obligated to pay its clients a "reasonable rate of interest" on the clients' cash balances.

**1.  Schwab's Duties Under the Advisers Act**

26.    When Schwab acts as an Investment Adviser for client accounts, it owes its clients a fiduciary duty. *See* Securities and Exchange Commission Interpretation

Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR § 276 (July 12, 2019) ("Under federal law, an investment adviser is a fiduciary.").

27.    "The Advisers Act establishes a federal fiduciary duty for investment advisers. This fiduciary duty is based on equitable common law principles and is fundamental to advisers' relationships with their clients under the Advisers Act." *Id.*

28.    Under this federal duty, Schwab "must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client." *Id.*

29.    If there is a conflict between Schwab's interests and its client's interests, then Schwab is also required to "eliminate or make full and fair disclosure of all conflicts of interest which might incline an adviser—consciously or unconsciously—to render advice which is not disinterested such that a client can provide informed consent to the conflict." *Id.*

30.    Schwab "must make full and fair disclosure to its clients of all material facts relating to the advisory relationship." *Id.*

31.    Schwab's fiduciary duties also include a duty of care to carry out its responsibilities in an informed and considered manner and to act as an ordinary prudent person would act in the management of his or her own affairs. In addition, because Schwab becomes a fiduciary on the basis of representations of special skills

or expertise, it is under a duty to use those skills and expertise for the benefit of its clients.

### 2.  Schwab's Duties Under Regulation Best Interest (Reg. BI)

32.    Where Schwab is acting in its capacity as a broker-dealer, it is obligated to act in its clients' best interests under Reg. BI. 17 C.F.R. § 240.151-1.

33.    Reg. BI incorporates "key principles underlying fiduciary obligations, including those that apply to investment advisers under the Advisers Act, while providing specific requirements to address certain aspects of the relationships between broker-dealers and their retail clients." 84 Fed. Reg. 33318, 33320. Reg. BI and common law principles of fiduciary obligations "generally yield substantially similar results in terms of the ultimate responsibilities owed to retail investors."[3]

34.    Under Reg. BI, the investor "will be entitled to a recommendation … or advice … that is in the best interest of the retail investors and that does not place the interests of the firm or the financial professional ahead of the interests of the retail investor." 84 Fed. Reg. 33318, 33321.

35.    Reg. BI consists of a "General Obligation," which states, "When making a recommendation, a broker-dealer must act in the retail customer's best

---

[3]    *See* SEC Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Care Obligations (June 7, 2024), available at www.sec.gov/tm/standards-conduct-broker-dealers-and-investment-advisers.

COMPLAINT

interest and cannot place its own interests ahead of the customer's interests." 84 Fed. Reg. 33318, 33320.

36.    Within the General Obligation are more specific duties, including disclosure duties and a duty to avoid and disclose conflicts of interest.

37.    These specific duties require disclosure of "all material facts relating to conflicts of interest … that might incline a broker-dealer to make a recommendation that is not disinterested, including, for example, conflicts associated with proprietary products, payments from third parties, and compensation arrangements." 84 Fed. Reg. 33318, 33321.

38.    Part of a broker-dealer's obligation under Reg. BI is to "consider reasonable alternatives, if any, offered by the broker-dealer in determining whether it has a reasonable basis for making the recommendation." 84 Fed. Reg. 33318, 33321.

39.    One component of a broker-dealer's duty to disclose conflicts of interest concerns compensation. "The receipt of higher compensation for recommending some products rather than others, whether received by the broker-dealer, the associated person, or both, is a fundamental and powerful incentive to favor one product over another." 84 Fed. Reg. 33318, 33364.

40.    Schwab was required to act in the best interests of its clients when recommending an account type to its clients, including "understanding of the

characteristics of a particular type of account [and] should consider, without limitation, factors such as the services and products provided in the account (including ancillary services provided in conjunction with an account type . . . ."[4]

41.     The SEC recently reiterated that compensation, revenue, and other benefits from cash sweep programs give rise to a conflict of interest for both broker-dealers and investment advisers.[5]

42.     Schwab promises that "[w]hen [CS & Co.] makes a recommendation to you . . . we will do so in your best interest and not put our interest ahead of yours. As part of this promise, we want to make sure you understand our business practices that relate to our investment advice when acting as your broker-dealer."[6]

43.     Schwab's default placement and continuing maintenance of Plaintiff's and Class members' cash into the Sweep Program constitutes a "recommendation" within the scope of Reg. BI, and as a result, Schwab was required to act in the best interests of its client when making that recommendation.

---

[4]     *See* SEC Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Account Recommendations for Retail Investors (June 7, 2024), available at https://www.sec.gov/tm/iabd-staff-bulletin.

[5]     *See* Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Conflict of Interest (June 12, 2024), available at https://www.sec.gov/tm/iabd-staff-bulletin-conflicts-interest.

[6]     *Best Interest Disclosure*, Charles Schwab (accessed Sep. 5, 2024), available at https://www.schwab.com/transparency/best-interest.

44.     Under Reg. BI, Schwab was and is obligated to elevate its clients' interests above its own, to avoid conflicts with clients' interests, and to disclose material facts concerning any conflicts that may exist.

### 3.    Schwab's Contractual Duties

45.     Schwab's relationship with its clients is also governed by a written contract, the terms of which are contained in, and incorporated into, various standardized documents drafted by Schwab.

46.     One such document, titled Cash Features Program Disclosure Statement (the "Program Disclosure"), governs the operations of Schwab's cash sweep programs.

47.     Under the Program Disclosure, Schwab agreed that "Retirement and other benefit plan accounts will be paid a reasonable rate consistent with applicable legal and regulatory requirements."[7]

48.     Additionally, either expressly or impliedly, in all of its retail accounts, Schwab agreed to comply with all applicable laws and regulations, including Reg. BI.[8]

49.     Thus, Schwab was contractually obligated to pay to or secure for its

---

[7]     *Cash Features Program Disclosure Statement*, Charles Schwab, at p. 10.

[8]     *See e.g.*, *Schwab One Account Agreement*, Charles Schwab (July 2024), at p. 30.

COMPLAINT

clients a reasonable rate on their cash balances.

### C.    Schwab Breaches Its Duties and Profits Thereby

50.    Schwab breaches its duties to pay or secure reasonable interest rates for its clients' cash deposits.

51.    Although Schwab does not define the term "reasonable," according to the term's dictionary definition, it is synonymous with "fair" and "proper."[9]

52.    IRS regulations define an "arm's-length interest rate" as:

> a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances.

26 CFR § 1.482-2(a)(2).

53.    In 2003, in the context of discussing certain transaction restrictions in ERISA, the Department of Labor provided the following definition of a "reasonable" rate of interest:

> A "reasonable" rate of interest means a rate of interest determinable by reference to short-term rates available to other clients of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as sovereign short term debt (*e.g.*, in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated.

68 Fed. Reg. 34646, at 34648 (June 10, 2003).

---

[9]    *See* Reasonable, Black's Law Dictionary (12th ed.).

COMPLAINT

54.    To the extent there is any ambiguity to the term "reasonable," the ambiguity must be resolved against Schwab and in favor if its clients.

55.    Under any definition of the term, Schwab did not pay or secure "reasonable" rates of interest to Plaintiff and proposed Class members.

56.    The rates offered by Schwab through its cash sweep programs were significantly lower than sweep programs at other brokerage and advisory firms. For example, Schwab's default cash sweep rate is only 0.45%. In contrast, Vanguard offers a "Vanguard Cash Deposit" at a rate of 3.6% with FDIC coverage up to $2.5 million and is designed for its clients' short-term cash settlement in the brokerage account.[10]

57.    Money market fund rates also provide a benchmark for determining what constitutes a "reasonable rate" and /or a reasonable alternative investment for clients' cash.

58.    Some of Schwab's competitors automatically sweep any uninvested cash deposited into its clients' brokerage accounts into money market funds that earn comparably high rates of interest. For example, by default, Fidelity sweeps uninvested cash in its clients' brokerage accounts into a money market fund currently

---

[10] *See      Vanguard      Cash      Deposit*,      available      at https://investor.vanguard.com/investment-products/vanguard-cash-deposit (accessed Sep. 3, 2024).

COMPLAINT

earning approximately 5%,[11] and InteractiveBrokers offers a blended rate up to 4.83%.[12]

59.    While Vanguard does offer an alternative FDIC insured bank sweep option, Vanguard's default sweep program deposits its clients' cash into a money market fund, which offers a rate of 5.25%.[13]

60.    While cash swept into money market funds may lack FDIC coverage—theoretically bearing more risk—competitors of Schwab still offer money market funds as the default sweep option because the investment risk is near zero.

61.    The approximate 5-point difference between Schwab's cash sweep programs' rate of return and that of Vanguard's sweep into a money market fund bears no material relationship to, and cannot reasonably be justified by, the comparative risk of those investments and is further evidence of the unreasonable rates Schwab offers its clients.

---

[11]    *See Help your cash work harder*, Fidelity, available at https://www.fidelity.com/go/manage-cash-rising-costs (accessed Sep. 4, 2024).

[12]    *Safeguard Your Assets with Our Insured Bank Deposit Sweep Program*, https://www.interactivebrokers.com/en/accounts/sweep-program.php (accessed Sep. 3, 2024); *Interest Rates*, available at https://www.interactivebrokers.com/en/accounts/fees/pricing-interest-rates.php, (accessed Sep. 3, 2024).

[13]    *See Vanguard Cash Deposit*, available at https://investor.vanguard.com/investment-products/vanguard-cash-deposit (accessed Sep. 3, 2024); VMFXX Vanguard Federal Money Market Fund, (accessed Sep. 4, 2024) available at https://investor.vanguard.com/investment-products/mutual-funds/profile/vmfxx

62.    Schwab has maintained a system by which it generates significant profits using clients' cash balances. The system is devised to maximize profits for Schwab while at the same time disregarding its clients' best interests; in fact, Schwab generates interest income on its clients' cash balances that are orders of magnitude greater than amounts the client receives.

### D.    Schwab Benefits from Its Breaches of Duty

63.    Schwab earns interest revenue on non-trading assets that it holds for its clients; this includes cash deposits and other capital that is not deployed for trading purposes.

64.    The difference between what Schwab earns on the deposits in the Sweep Program and what it pays its clients is the company's net interest income.

65.    Schwab's "primary funding source for interest-earning assets is uninvested client cash balances held on [its] balance sheet . . . ."[14]

66.    Accordingly, Schwab's net revenue is heavily impacted by its net interest income. In 2023, Schwab reported that it generated $9.4 billion in net interest revenue.[15]

67.    The fluctuation of interest rates has a significant impact on Schwab. As Schwab reports, a decrease in interest rates "may have a negative impact on [its] net

---

[14]    Form 10-K, at p. 6.

[15]    *Id.* at 33.

interest revenue," while a rise in interest rates "may cause [Schwab's] funding costs to increase . . . to avoid losing deposits . . . which can reduce the benefit of higher market interest rates to our net interest revenue, as we experienced in 2022 and 2023."[16]

68.     Thus, Schwab—in contravention to the duty owed to its clients—was incentivized to offer its clients a rate as low as possible as the interest rates grew over the last several years to maximize its own profits.

69.     Schwab has a significant financial interest in (1) not paying clients a reasonable interest rate and keeping as much of the "spread" as it can, and simultaneously (2) not making reasonable disclosures to its clients concerning the unreasonable interest rates it pays (as well as the company's inherent conflict of interests), lest the clients pursue accounts with reasonable rates at other institutions.

## V.    CLASS ACTION ALLEGATIONS

70.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

71.     Plaintiff brings this class action and seeks certification of the following Class:

> **Retail clients of Schwab who had cash deposits or balances in Schwab's cash sweep programs.**

---

[16]     *Id.* at 13.

72.    Plaintiff also brings this class action and seeks certification of the following Subclass (the "IRA Subclass"):

> **Retail clients of Schwab with Traditional IRA or Roth IRA accounts who had cash deposits or balances in Schwab's cash sweep programs.**

73.    Plaintiff reserves the right to amend the Class and IRA Subclass definitions if further investigation and discovery indicates that the Class and IRA Subclass definitions should be narrowed, expanded, or otherwise modified.

74.    Excluded from the Class and IRA Subclass are governmental entities, institutional and other non-retail investors; Schwab and any of its affiliates, legal representatives, employs, or officers; the judicial officer(s) and any judicial staff overseeing this litigation; and counsel for Plaintiff and the proposed Class, including other attorneys and staff at each respective firm.

75.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

**Numerosity**
**Rule 23(a)(1)**

76.    Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time. However, Schwab has "$8.52 trillion in client assets, 34.8 million active brokerage accounts, 4.2 million workplace plan

participant accounts, and 1.8 million banking accounts."[17] Accordingly, Plaintiff and the Class satisfy the numerosity requirement of Rule 23. Class members may be notified of the pendency of this action by mail, published notice, or other appropriate methods.

### Existence and Predominance of Common Questions of Law and Fact Rule 23(a)(2), 23(b)(3)

77.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

a.    whether the interest rates paid to or secured for Schwab's retail clients in Schwab's cash sweep programs are "reasonable";

b.    whether Schwab owed a fiduciary duty to the Class, and whether Schwab violated that duty;

c.    whether Schwab owed a duty to the Class under Reg. BI, and whether Schwab violated that duty;

d.    whether Schwab owed an express or implied contractual duty to the Class to act in their best interests, and whether Schwab violated that duty;

---

[17]    Form 10-K, at p. 1.

e.   whether Schwab was unjustly enriched by its wrongful conduct;

f.   whether and to what extent Class members are entitled to damages and other monetary relief; and

g.   whether and to what extent Class members are entitled to attorneys' fees and costs.

### Typicality
### Rule 23(a)(3)

78.   Plaintiff's claims are typical of the Class's claims because he was a retail account holder with Schwab who received an unreasonable interest rate on his cash sweep balances. Thus, Plaintiff's claims are typical of other Class members' claims as they arise from the same course of conduct by Defendant, and the relief sought is common to Class members.

### Adequacy of Representation
### Rule 23(a)(4)

79.   Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

### Superiority
### Rule 23(b)(3)

80.   A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment

suffered by individual Class members are small compared with the burden and expense required for each Class member to individually litigate their claims against Defendant. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them.

81.    Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

82.    Superiority is particularly satisfied in these circumstances, where the law of a single state will apply to all state law claims. Under the uniform contract terms with Schwab, the law of California will apply to each Class member's state law claims, allowing the Court to adjudicate the claims of all Class members under a single state analysis.

83.    Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

    a.    The prosecution of separate actions by individual Class members would

create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

b.   The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.   Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### Brought on Behalf of the Class Against CS & Co.

84.   Plaintiff, on behalf of himself and the Class, re-alleges the paragraphs above as if fully set forth herein.

85.   Schwab owed fiduciary duties to Class members who maintained cash deposits or balances in Schwab's cash sweep programs.

86.   Schwab's fiduciary duties include, but are not limited to:

a.   a duty of undivided loyalty;

COMPLAINT

b.   a duty to act in the best interests of its clients;

c.   a duty of care;

d.   a duty not to place Schwab's interests above those of its clients;

e.   a duty to avoid conflicts of interest; and

f.   a duty to disclose any conflicts of interest.

87.   Schwab violated each of the foregoing duties when it (1) failed to pay to or secure for Plaintiff and the Class a reasonable rate of interest; (2) failed to act in Plaintiff's and the Class's best interests by not providing a reasonable default for cash balances that paid its clients a reasonable rate of interest on cash balances; (3) placed its own interests in realizing financial gain from net interest income ahead of Plaintiff and the Class's interests in obtaining a reasonable rate of interest; (4) maintained and failed to adequately disclose its conflict of interest in securing increased net interest income at the expense of its clients; (5) failed to recommend to Plaintiff and the Class a cash sweep program that would pay a reasonable rate of interest.

88.   Schwab's conduct damaged Plaintiff and the Class.

89.   Plaintiff, individually and on behalf of the Class, seeks all damages permitted by law.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment
### Brought on Behalf of the Class Against All Defendants

90.    Plaintiff, on behalf of himself and the Class, re-alleges the paragraphs above as if fully set forth herein.

91.    As a result of Schwab's wrongful conduct, Plaintiff and the Class received lower interest payments on their cash and other deposits than they would have had they been paid a reasonable rate of interest.

92.    As a result of Schwab's wrongful conduct, Schwab was unjustly enriched and Plaintiff and the Class conferred a benefit upon Schwab because Schwab received significantly greater net interest income than it would have but for its wrongful conduct.

93.    Schwab appreciated, knowingly accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the Class.

94.    It would be inequitable and unjust for Schwab to retain these wrongfully obtained benefits.

95.    Schwab's retention of these wrongfully obtained benefits would violate fundamental principles of justice, equity, and good conscience.

96.    Plaintiff and the Class are entitled to restitution and disgorgement of the benefits unjustly obtained, plus interest.

### THIRD CLAIM FOR RELIEF
### Breach of Contract
### Brought on Behalf of the Class Against CS & Co.

97.    Plaintiff, on behalf of himself and the Class, re-alleges the paragraphs above as if fully set forth herein.

98.    Schwab breached its contractual obligations to Plaintiff and the Class by failing to abide by all applicable laws and regulations, including Reg. BI.

99.    Schwab breached its contractual obligations to Plaintiff and the Class by failing to act in the best interests of Plaintiff and the Class.

100.    Schwab breached its contractual obligations to Plaintiff and the Class by failing to pay to or secure for Plaintiff and the Class reasonable rates on interest on their cash balances.

101.    Schwab's breaches of contract damaged Plaintiff and the Class.

102.    Plaintiff, individually and on behalf of the Class, seeks all damages permitted by law.

### FOURTH CLAIM FOR RELIEF
### Breach of Contract
### Brought on Behalf of the IRA Subclass Against CS & Co.

103.    Plaintiff, on behalf of himself and the IRA Subclass, hereby re-alleges the paragraphs above as if fully set forth herein.

104.    Schwab agreed that "[r]etirement and other benefit plan accounts will be paid a reasonable rate" on cash deposits or balances maintained in the IRAs.

105.   Schwab failed to pay to or secure for its clients a "reasonable rate of interest" on their cash deposits or balances in their IRAs; therefore, Schwab breached its contracts with Plaintiff and the IRA Subclass.

106.   Schwab's conduct damaged Plaintiff and the IRA Subclass.

107.   Plaintiff, individually and on behalf of the IRA Subclass, seeks all damages permitted by law.

## VII.   DISCLAIMER

108.   Plaintiff expressly disclaims and disavows any claim or cause of action based on fraud or intentional misrepresentations or omissions made with intent to mislead or defraud.

109.   Plaintiff's allegations regarding Defendants' representations of special skills or expertise are made in support of Plaintiff's claim that Defendants have a duty of care to use those skills and expertise for the benefit of its clients and not in support of any claim that those representations were made with intent to mislead or defraud.

## VIII.  DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, demands judgment and relief as follows:

1.   For an order certifying the proposed Class, and appointing Plaintiff and his counsel to represent the proposed Class;

2.  For an order awarding Plaintiff and Class members damages in an amount to be proven at trial, together with pre-trial and post-trial interest thereon;

3.  For an order awarding Plaintiff and Class members restitution, disgorgement, or such other and further relief as the Court deems proper; and

4.  For an order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees.

## IX.    JURY TRIAL DEMAND

Plaintiff, on behalf of himself and the Class, demands a trial by jury on all issues so triable.

Dated: September 6, 2024

/s/ Deborah R. Rosenthal
Deborah Rosenthal Cal. Bar No. 184241
**SIMMONS HANLY CONROY LLP**
455 Market Street
Suite #1270
San Francisco, California 94105
(415) 536-3986
drosenthal@simmonsfirm.com

and

Thomas I. Sheridan, III
Sona R. Shah
**SIMMONS HANLY CONROY LLP**
112 Madison Avenue
New York, NY 10016
(212) 784-6404

COMPLAINT

tsheridan@simmonsfirm.com
sshah@simmonsfirm.com

and

Matthew L. Dameron
Clinton J. Mann
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
(816) 945-7110
matt@williamsdirks.com
cmann@williamsdirks.com

and

Bruce D. Oakes
Richard B. Fosher
**OAKES & FOSHER, LLC**
1401 Brentwood Boulevard, Suite 250
Saint Louis, Missouri 63144
(314) 428-7600
boakes@oakesfosher.com
rfosher@oakesfosher.com

***Counsel for Plaintiff and the Proposed Class***

COMPLAINT